## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jarrod C. Chittum, being duly sworn, do hereby depose and say:

## INTRODUCTION

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF) and have been since March 2015. I am a graduate of the Federal Law
Enforcement Training Center's Criminal Investigator Training Program and ATF's Special
Agent Basic Training. Further, I have completed ATF's Firearms Interstate Nexus Training,
ATF's Advanced Interstate Nexus Training, and ATF's Advanced Privately Made Firearms
(PMF) Training. I have a Bachelor of Arts degree in Business Administration from Lindsey
Wilson College in Columbia, KY, and a Master of Business Administration (MBA) degree from
the University of Rio Grande in Rio Grande, OH.

2.      I am currently assigned to the ATF Louisville Field Division, Charleston, WV
Field Office (FO), which is comprised of ATF Special Agents whose primary responsibilities
include investigating individuals or groups who have committed violations of the federal
firearms and narcotics laws.  During my tenure as an ATF agent, I have conducted and
participated in numerous investigations, and have debriefed, or participated in debriefings of
defendants, informants, and witnesses who had personal knowledge regarding federal firearms
and narcotics violations.  I have participated in all aspects of these investigations, including
conducting surveillance, analyzing information obtained from court-ordered pen registers and
trap and trace intercepts, and analyzing telephone toll information obtained as a result of
subpoenas issued by the ATF. I have been the affiant for numerous affidavits, in support of both
search and arrest warrants.

3.      For the reasons stated below, there is probable cause to believe that evidence
relating to violations of federal law will be found in the stored electronic information and
communications in the cellular telephone described more fully in Attachment A with telephone
number 681-207-6876 (**Device**). These violations include: 18 U.S.C. § 922(a)(6) *(Making False
Statements)*; 18 U.S.C. § 924(a)(1)(A) *(Providing False Information)*; 18 U.S.C. § 932 *(Straw
Purchasing of Firearms); and 18 U.S.C. § 371 *(Conspiracy)*.  The violations, described in
paragraphs 19 through 36, relate to knowingly making a false statement to a Federal Firearms

Licensee (FFL) in connection with the acquisition or attempted acquisition of a firearm, or furnishing any false, fictitious, or misrepresented identification, intended or likely to deceive the FFL with respect to any fact material to the lawfulness of the sale; knowingly making a false statement with respect to information required to be kept in an FFL's records (such as a person's name, current address, or the identity of the actual buyer of a firearm); knowingly purchasing any firearm on behalf of, or at the request of, any other person; and conspiring to commit an offense against the United States by Leslie WEBB (WEBB).

4.    The information set forth below is either known to me personally or was related to me by other law enforcement personnel.  This Affidavit is submitted in support of a search warrant for the stored electronic information and communications on the **Device** further described in Attachment A and therefore, does not set forth all of my knowledge about this matter. The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data, as more information and communications which could be stored on this phone, as more particularly described in Attachment B.

## IDENTIFICATION OF DEVICE TO BE EXAMINED

5.    The **Device** is one (1) navy blue in color Motorola, Model XT2271-3, IMEI: 358390902556631, in a glitter filled purple/blue case, and is currently in the lawful possession of ATF.  The **Device** came into ATF's possession in the following way: seized by Beckley Police Department (BPD) on March 12, 2024, during the traffic stop and arrest of WEBB for an outstanding misdemeanor warrant in the Magistrate Court of Raleigh County, West Virginia (WV).  SA Chittum took possession of the **Device** from BPD following his audio recorded interview with WEBB on March 12, 2024, because SA Chittum believes there is probable cause to believe that evidence relating to violations of federal law exist on the **Device**.  The **Device** was seized in order to seek this Search Warrant.

6.    The **Device** is currently stored at ATF Louisville Field Division, Charleston, WV Field Office evidence room.  In my training and experience, I know that the **Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Device** first came into the possession of ATF.

## FEDERAL FIREARMS LICENSING

7.      Federal law requires any person engaged in the business of dealing in firearms to be licensed by ATF.  Persons so licensed are known as FFLs.  Federal law requires FFLs to maintain certain records relating to the acquisition and disposition of firearms. The most common record is ATF Form 4473 ("4473"), which is used to record over-the-counter sales of firearms.  The 4473 requires the buyer of a firearm to provide his or her name, current address, and other identifying information.  The buyer must also present the FFL with a valid government-issued photo identification.

8.      The 4473 also requires the buyer to answer a series of questions related to the lawfulness of sale, including whether he or she is the actual buyer of the firearm.  The form contains a warning in emboldened text: **"Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person.  If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you."**

9.      At the conclusion of the series of questions, the 4473 requires the purchaser of a firearm to sign his or her name and **"certify that [his or her] answers [to the questions] are true, correct, and complete."**  This certification paragraph appears directly above the line where the purchaser must sign his or her name.

10.     In addition to the certification, the certification paragraph includes the following acknowledgements in emboldened text:

a.      **"I understand that answering 'yes' to [the question asking whether the buyer is the actual buyer of the firearm(s)] if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law."**

b.      **"I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law."**

c.      **"I further understand that the repetitive purchase of firearms for the purpose of resale to predominantly earn a profit without a Federal firearms license is a violation of Federal law."**

## **"FIREARMS TRAFFICKING"**

11.     Historically, "firearms trafficking" has been a law enforcement term, not a legal

one.  It was used to describe a number of schemes employed to move firearms from the legal market to the illegal one, to include a "straw purchase."   A straw purchase is where the person who completed the 4473 (the straw purchaser) was not the actual buyer, but rather acquired the firearm on behalf of another person (the actual buyer).  Straw purchases conceal the identity of the actual buyer, who is typically someone prohibited from possessing firearms and thus unable to purchase the firearm on his or her own behalf.  Another scheme individuals employ to move firearms from the legal market to the illegal one relates to dealing in firearms without a license, which is described in more detail below.

12.     More recently, though, with the passage of the Bipartisan Safer Communities Act in 2022—and specifically, Section 12004 of that legislation, the Stop Illegal Trafficking in Firearms Act—criminal "straw purchasing" and "firearms trafficking" statutes were added to Title 18 of the United States Code as follows:

a.      Straw Purchasing of Firearms: 18 U.S.C. § 932 makes it "unlawful for any person to knowingly purchase, or conspire to purchase, any firearm in or otherwise affecting interstate or foreign commerce for, on behalf of, or at the request or demand of any other person" who meets certain characteristics enumerated in the statute.

b.      Trafficking in Firearms: 18 U.S.C. § 933 makes it "unlawful for any person to . . . ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony" or to "receive from another person any firearm in or otherwise affecting interstate or foreign commerce, if the recipient knows or has reasonable cause to believe that such receipt would constitute a felony."

13.     To identify firearms trafficking schemes, ATF analyzes traces of firearms recovered in crimes, "multiple sales" reports (FFLs are required to report the sale of two (2) or more handguns to a single buyer in a five (5)-day period), and other law enforcement data to look for common firearms trafficking indicators.  These indicators include firearms recovered ("recoveries") with a short "time-to-crime" (the length of time between the sale of the firearm and its recovery by law enforcement), traces of firearms sold as part of a multiple sale, frequent

or repetitive purchases of the same or similar firearms, or firearms reported stolen soon after purchase (to conceal the link between the trafficker and the buyer of the firearm in case it is recovered in a crime).

14.     Further, firearms traffickers can be prosecuted using a number of other statutes that make their underlying conduct illegal.  For example:

     a.   <u>Making False Statements</u>: 18 U.S.C. § 922(a)(6) prohibits knowingly making a false statement to an FFL in connection with the acquisition or attempted acquisition of a firearm, or furnishing any false, fictitious, or misrepresented identification, intended or likely to deceive the FFL with respect to any fact material to the lawfulness of the sale.

     b.   <u>Providing False Information</u>: Similarly,18 U.S.C. § 924(a)(1)(A) prohibits knowingly making a false statement with respect to information required to be kept in an FFL's records (such as a person's name, current address, or the identity of the actual buyer of a firearm).

     c.   <u>Transferring Firearms to Prohibited Persons</u>: 18 U.S.C. § 922(g)(1) prohibits certain people (such as felons) from possessing firearms. 18 U.S.C. § 922(d) makes it unlawful to sell or otherwise dispose of a firearm to a person knowing or have reasonable cause to believe the person is prohibited from possessing firearms.

     d.   <u>Conspiracy</u>: 18 U.S.C. § 371 makes it a crime to conspire to commit an offense against the United States.

<b><u>DEALING IN FIREARMS WITHOUT A LICENSE</u></b>

15.     18 U.S.C. § 922(a)(1)(A) makes it unlawful to willfully "engage in the business" of dealing in firearms without a license.  Under federal law, a person engaged in the business of dealing in firearms is "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms."  18 U.S.C. § 921(a)(21)(C).  Conducting business "to predominantly earn a profit" "means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection."  18 U.S.C. § 921(a)(22).  Federal law explicitly exempts persons "who make[] occasional sales, exchanges, or purchases of firearms for the

enhancement of a personal collection or for a hobby, or who sell[] all or part of [their] personal collection of firearms." 18 U.S.C. § 921(a)(21)(C).

16.    Federal law does not establish a "bright line" rule for when a license is required; there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement. Instead, determining whether someone is "engaged in the business" of dealing in firearms is a fact-specific inquiry into factors such as whether the person represents him- or herself as a source of firearms; whether he or she repetitively buys and sells firearms; the timing and circumstances under which the person is selling firearms; and whether he or she intends to earn a profit. No single factor is determinative, and the relative importance of any of the factors will vary depending on the facts and circumstances applicable to the individual seller.

17.    For instance, it is relevant whether a person represents him- or herself as a source of firearms, whether he or she takes orders or obtains specific firearms for buyers, whether he or she offers to buy firearms to immediately resell, whether he or she repetitively acquires and resells firearms in unopened, original packaging, or in new condition, and what price or fees he or she charges for firearms. Courts have found that even a few firearm transactions, when combined with other evidence, can be sufficient to establish that a person is "engaged in the business" of dealing in firearms. For example, courts have upheld convictions for dealing without a license when as few as two firearms were sold, or when only one or two transactions took place.

18.    Based on my knowledge, training, and experience, I know that firearms traffickers often maintain in their residences and/or businesses written or electronic records, books, ledgers, receipts, notes, notebooks, price lists, telephone records, address books, customer lists, contact lists, order lists, commercial materials that describe the specifications, prices, and features of firearms, and other items relating to the acquisition, transportation, and disposition of firearms. Further, I know that firearms traffickers utilize cellular and other electronic devices, and social media and other photographic and written records contained within such devices, to communicate with other persons to acquire, facilitate the purchase, sale, or transport of, and/or otherwise traffic such firearms.

## INVESTIGATION BACKGROUND

19.     In late February 2024, ATF Charleston, WV Field Office opened an investigation into Leslie WEBB for the suspected straw purchasing of firearms. In doing so, Agents reviewed information related to WEBB and her firearms purchases. According to ATF Multiple Sale Summary, Multiple Sale Number: M20240095895, WEBB purchased a Smith & Wesson, Model SD9 2.0, 9-mm caliber pistol, SN: EFE4541, and a Radical Firearms, Model RF-15, 5.56 caliber pistol, SN: 21-045762, from Bridgeport Equipment & Tool, 156 Queen Anne Drive, Beckley, WV 25801, telephone number 304-252-6688, on 2/22/2024. Further, according to ATF Multiple Sale Summary, Multiple Sale Number: M20240024833, WEBB purchased a Taurus, Model G3C, 9-mm caliber pistol, SN: AEG491625, and a Taurus, Model G3C, 9-mm caliber pistol, SN: AEE448369, from Rural King, 100 Crossroads Mall, Mount Hope, WV 25880, telephone number 304-254-8150, on 1/5/2024.

20.     Agents also reviewed information related to WEBB and the recovery of firearms she had previously purchased by law enforcement. According to ATF Firearms Trace Summary, Trace Number: T20240088313, a Taurus Model G3C, 9-mm caliber pistol, SN: AEC247444, purchased by WEBB from Rural King on 12/30/2023 was recovered by the BPD during the execution of a search warrant at 210 Maplewood Lane, Beckley, WV 25801, on 2/14/2024. This firearm had a Time-to-Crime (TTC) of 46 days.

21.     Also, according to ATF Firearms Trace Summary, Trace Number: T20240088180, a Taurus Model G3C, 9-mm caliber pistol, SN: AEE448369, purchased by WEBB from Rural King on 1/5/2024 was recovered by the BPD during the execution of the same search warrant at 210 Maplewood Lane, Beckley, WV 25801, on 2/14/2024. This firearm had a TTC of 40 days.

22.     On February 28, 2024, Bridgeport Equipment & Tool contacted SA Chittum and stated that WEBB was in the store attempting to purchase another firearm and was accompanied by three (3) male individuals. They were later identified as Samuel Ricco MEDLEY *(B/M, DOB: 4/20/1987, SSN: 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, FBI: 508000KC4, Last Known Address (LKA): 86 9ᵗʰ Street, Beckley, WV 25801)*, Jason Antone TERRELL *(B/M, DOB: 8/9/1982, SSN: 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, FBI: 402594VB7, LKA: 123 Rice Street, Beckley, WV 25801)*, and Kevin Wray TERRELL *(B/M, DOB: 9/5/1985, SSN: 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, FBI: 57895EC9, LKA: 1720 South Fayette Street, Beckley, WV 25801)*. It should be noted, all three (3) individuals (MEDLEY, Jason TERRELL, and

Kevin TERRELL) have been convicted of felony offenses and are prohibited from possessing firearms and ammunition under Federal law.

23.     WEBB completed and certified the ATF Form 4473, Firearms Transaction Record, dated 2/28/2024 for the purchase of a Glock, Model 19, 9-mm caliber pistol, SN: BUPE841.  However, based on their observations, employees were not comfortable with the transaction and advised WEBB that the National Instant Criminal Background Check System (NICS) check came back "Delayed" and they would contact her when it switched to "Proceed." WEBB purchased firearm magazines, ammunition, and a sling prior to leaving the store.  WEBB, along with MEDLEY, Jason TERRELL, and Kevin TERRELL left the parking lot in a blue Jeep vehicle bearing Florida (FL) registration 98E-LZT.

24.     A review of Bridgeport Equipment & Tool video surveillance footage during this transaction shows WEBB with multiple items at the gun counter, including firearms magazines and ammunition.  WEBB then walks away from the counter, interacts with Kevin TERRELL, and picks up a box of ammunition.  WEBB is then seen receiving money from Kevin TERRELL and walking back to the gun counter.  WEBB is next observed counting out a large amount of U.S. Currency on the counter.  When employees relay to WEBB that the transaction is "Delayed" WEBB collects the U.S. Currency and the items for purchase from the counter and proceeds to the front cash registers to check out.

25.     On February 29, 2024, SA Chittum traveled to Federal Firearms Licensees (FFLs) in the Beckley, WV area and learned that on 8/27/2021, WEBB purchased a Glock, Model 19X, 9-mm caliber pistol, SN: BUCD060, from Shooter's Roost, previously located at 2301 S. Fayette Street, Beckley, WV 25801, currently located at 118 Hankwoods Drive, Beckley, WV 25801, telephone number 304-575-2246.  While speaking with employees of Shooter's Roost, SA Chittum learned that on February 28, 2024, at approximately 5:06 p.m., they received a telephone call from a male caller utilizing Baltimore, Maryland (MD) telephone number 443-418-1540, inquiring about body armor.

26.     At approximately 5:14 p.m., WEBB purchased a Level IV plate carrier (body armor) from Shooter's Roost for $424, paid for with U.S. Currency.  A review of video surveillance showed that during the transaction, WEBB was accompanied inside the store by MEDLEY and Jason TERRELL.

27.     On March 12, 2024, at approximately 1502 hours, SA Chittum received communication from Bridgeport Equipment & Tool that WEBB was in the store attempting to purchase a firearm.  Employees also stated that there were two (2) unknown black males (later identified as Jason TERRELL and Kevin TERRELL) sitting in the vehicle that WEBB arrived to the store in, described as a blue Jeep bearing FL registration 98ELZT.  Employees stated WEBB was purchasing a Glock, Model 19 GEN 5, 9-mm caliber pistol, SN: AFTC714.

28.     SA Chittum contacted ATF Task Force Officer (TFO) Michael Deems, who responded to the area of Bridgeport Equipment & Tool and established surveillance on the blue Jeep bearing FL registration 98ELZT.  After leaving the store and exiting the area, a BPD marked unit initiated a traffic stop on the vehicle being operated by WEBB.  WEBB was arrested for an outstanding misdemeanor warrant in the Magistrate Court of Raleigh County, West Virginia, then transported to BPD for processing.  It should be noted, Jason TERRELL and Kevin TERRELL were still in the vehicle when BPD initiated the traffic stop.

29.     Once at BPD, WEBB was placed in an interview room where she was interviewed by SA Chittum and SA Quinn Conlon.  Prior to questioning, SA Chittum allowed WEBB to read ATF Form 3200.4, Advice of Rights and Waiver.  WEBB stated that she understood her rights, agreed to speak with Agents, and signed the form.

30.     WEBB stated she had recently purchased three (3) Taurus pistols, a Smith & Wesson pistol, a Radical Arms pistol, and that she had just purchased a Glock pistol.  WEBB also stated that two (2) of the Taurus pistols were stolen but that she still has possession of the four (4) remaining firearms.  Further, WEBB advised that she did not report the Taurus firearms stolen because WV does not require you to call and report firearms stolen.

31.     WEBB stated she purchased the Taurus firearms from Rural King around Christmas 2023 because they were on sale.  WEBB stated the firearms were under her bed in her bedroom, which she shares with her husband, Jason TERRELL.  WEBB stated the firearms were not locked up and were still in the original box because they were brand new.  WEBB stated Jason TERRELL knew the firearms were there but had never touch them.  WEBB stated they had a party at 123 Rice Street, Beckley, WV, and the next thing she knew the firearms were gone.  Further, WEBB stated after the firearms were stolen, she returned to Rural King and purchased another Taurus pistol.

32.     It should be noted, a Taurus Model G3C, 9-mm caliber pistol, SN: AEC247444, purchased by WEBB from Rural King on 12/30/2023 was recovered by BPD on 2/14/2024. This firearm had a TTC of 46 days. Further, WEBB purchased a Taurus, Model G3C, 9-mm caliber pistol, SN: AEG491625, and a Taurus, Model G3C, 9-mm caliber pistol, SN: AEE448369, from Rural King, on 1/5/2024. The Taurus Model G3C, 9-mm caliber pistol, SN: AEE448369, was recovered by BPD, on 2/14/2024. This firearm had a TTC of 40 days. When confronted with this information, WEBB stated she just forgot the dates which is why she confused the order in which she purchased the firearms. WEBB advised she has no idea where the Taurus firearms currently are.

33.     WEBB stated to Agents that her address is 126 Pine Street, Shady Spring, WV, which is where she keeps her firearms. WEBB also stated her dad, sister-in-law and their kids live at that address. WEBB stated she lived at 126 Pine Street for a few years but goes between there and 123 Rice Street, Beckley, WV, where she stays with her husband, Jason TERRELL. Further, WEBB stated her Smith & Wesson firearm was at 123 Pine Street in a lockbox and the other firearms are at 126 Pine Street. WEBB also stated her dad is not a convicted felon, so she does not have to lock those firearms up.

34.     WEBB stated that when she was traffic stopped by BPD, she was in possession of the Glock firearm she had just purchased and a Taurus firearm. WEBB stated the Taurus firearm recovered from the glovebox was her firearm and that no one else's fingerprints would be on the firearm. Again, it should be noted, Jason TERRELL and Kevin TERRELL were in the vehicle in the parking lot while WEBB purchased the Glock firearm and were both in the vehicle when BPD initiated the traffic stop. When asked about the Glock firearm she had just purchased, WEBB did not know the model of the firearm.

35.     SA Chittum explained to WEBB that he would be seizing her cellular telephone to apply for a search warrant, or that she was able to provide Agents with consent to search the cellular telephone. WEBB stated that nothing would be on her cellular telephone, and she would allow Agents to look. After the conclusion of the interview, Agents left the room to obtain ATF Form 3220.11, Consent to Search. Upon returning to the room and explaining the form to WEBB, she stated she wanted to withdraw her consent and did not want to sign the form.

36.     On March 12, 2024, SA Chittum took possession of the following items from BPD: Glock, Model 19, 9-mm caliber pistol, SN: AFTC714; Toolman Tactical, 35 round, 9-mm

caliber magazine; Motorola cellular telephone, Model XT2271-3, IMEI: 358390902556631; and a Taurus, Model G3C, 9-mm caliber pistol, SN: AEG491625 (with loaded magazine).  The above items of evidence were transported to the ATF Charleston, WV FO and logged into ATF custody.

## **CONCLUSION**

37.    Based upon my knowledge, training, and experience, I believe there is probable cause to believe that evidence of crimes, including violations of 18 U.S.C. § 922(a)(6) *(Making False Statements)*; 18 U.S.C. § 924(a)(1)(A) *(Providing False Information)*; 18 U.S.C. § 932 *(Straw Purchasing of Firearms);* and 18 U.S.C. § 371 *(Conspiracy)*, will be found in the stored electronic information and communications within WEBB's **Device**.

38.    SA Chittum, having signed this Affidavit under oath as to all assertions and allegations contained herein, states that its contents are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

Jarrod C. Chittum

Special Agent, ATF

Sworn to by the affiant telephonically in accordance with

the procedures of Rule 4.1 on March 19, 2024:

HON. OMAR J. ABOULHOSN

UNITED STATES MAGISTRATE JUDGE